Argued March 2; reversed April 26, 1949

# BUSH *v.* SHEPHERD, ADMINISTRATOR
### 205 P. 2d 842

*Norman K. Winslow* argued the cause for appellant. With him on the brief was W. C. Winslow, both of Salem.

*Oren R. Richards,* of Portland, argued the cause and filed a brief for respondent.

Before Lusk, Chief Justice, and Belt, Rossman, Kelly and Bailey, Justices.

BAILEY, J.

Plaintiff, Vernal Bush, on or about March 18, 1939, recovered in the Circuit Court for Multnomah County, a judgment of $3,750 against defendant, Max Ganguin, for injuries suffered by plaintiff in a collision between a motorcycle on which he was riding and a truck operated by defendant. At the time this judgment was entered Lots, 1, 2, 3, 4, 5, 6, 22, 23, and 24, in Block 5, Townsend's Addition in South Portland, Multnomah County, were owned by Ganguin or by him and his wife as tenants by the entirety.

On the 11th day of April, 1941, Ganguin was adjudicated a bankrupt by the District Court of the United States for the District of Oregon. The judgment of plaintiff was duly listed as a claim against the bankrupt. Two purported certified copies of "Schedule B.—Statement of all Property of Bankrupt", filed in the bankruptcy proceeding, were introduced in evi-

dence, one being plaintiff's exhibit 1 and the other defendant's exhibit 2. The descriptions of the property shown in these exhibits are the same. The real property hereinbefore described is listed in both exhibits as belonging to the bankrupt and his wife. In one exhibit the "Estimated Value" of the property is given as $4,500, and in the other the "Estimated Value of Debtor's Interest" is given as $4,500. Only one of these exhibits can be a correct copy of the original Schedule B on file in the United States District Court. Mrs. Mildred Ganong, "Deputy Clerk of the United States District Clerk's office, Bankruptcy Room", testified that the last mentioned exhibit, stating the "Estimated Value of Debtor's Interest", was the correct copy of the original Schedule B on file in the Clerk's office. In the schedule of "Property claimed as exempt from operation of the Act of Congress relating to Bankruptcy" Ganguin listed the above described real property, claimed it to be exempt by state laws, and stated that it had a valuation of $3,000. Thereafter said real property was set aside to the bankrupt as exempt and, on June 3, 1941, Ganguin was discharged from all debts and claims which were made provable by the Bankruptcy Act against his estate, except such debts as were, by said Act, excepted from the operation of a discharge in bankruptcy.

Ganguin, under date of May 20, 1942, executed a deed conveying the above described lots to Elwine Ganguin, his wife, which deed was, on April 22, 1943, recorded in the deed records of Multnomah County, Oregon. Since said conveyance Ganguin has claimed no interest in said property, and, according to plaintiff, he has had no interest therein.

On February 26, 1946, Ganguin, purporting to act pursuant to the provisions of § 6-1002, O. C. L. A., filed

a motion in the action in which such judgment was entered for an order discharging and satisfying said judgment on the alleged ground that he had been discharged from the payment of such judgment by his discharge in bankruptcy. Attached to and made a part of such motion was his affidavit in which he recited many of the matters hereinbefore set forth. Affiant, among other things, stated that the lots hereinbefore described were owned, presumably at the time he was declared a bankrupt, jointly by himself and his wife as tenants by the entirety.

In opposition to such motion plaintiff filed the affidavit of his attorney in which the affiant swore that the real property hereinbefore described is now and, at all times mentioned in defendant's affidavit, has been of the reasonable value in excess of $4,500, and that the interest of defendant Ganguin therein at all times mentioned, until he transferred such property, was of the reasonable value of $4,500, or in excess thereof. In the affidavit it is denied that such property was ever owned by Ganguin and his wife as tenants by the entirety. It is further stated therein that the affiant denies ''that defendant's interest in and to such property was set off to him as a homestead or exempt property in such Bankruptcy proceedings for the reason that * * * said defendant's interest in such property was of a greater reasonable market value than $3,000.00 and any excess above that amount could not have been lawfully set off to him as property exempt from execution.''

The Circuit Court, on December 30, 1947, entered an order authorizing and directing the clerk of that Court ''to enter satisfaction and discharge the judgment'' hereinbefore described. From this order plaintiff has appealed.

After the appeal had been perfected, but prior to oral argument in this court, Max Ganguin died, and, with the permission of this Court, William K. Shepherd, administrator of his estate, has been substituted in his place as respondent. Wherever the word "defendant" is herein used, it refers to Max Ganguin and not to the administrator of his estate.

Section 6-1002, O. C. L. A., which forms the basis of the present proceeding, reads as follows:

"Any person discharged from his debts pursuant to the act of congress known as 'An act to establish a uniform system of bankruptcy throughout the United States,' approved July 1, 1898, and all subsequent amendments thereto, may file in any court or tribunal in which a judgment shall at any time have been rendered or a transcript thereof filed against him, either before or after such discharge, a motion in such suit, action or proceeding for the discharge of the judgment from the record, and if it shall appear to the court that he has been discharged from the payment of such judgment or the claim upon which such judgment shall have been based, the court shall order and direct that such judgment be discharged and satisfied of record, and thereupon the clerk of such court shall enter a satisfaction thereof; provided, however, that no such order shall be granted except upon such notice to the parties interested as the court or judge thereof may by order prescribe."

■ When the foregoing judgment was docketed it became a lien on defendant's interest in the above described property, regardless of whether it was owned by him or by him and his wife as tenants by the entirety. § 6-801, O. C. L. A.; *Ganoe v. Ohmart,* 121 Or. 116, 254 P. 203. At the time of the entry of such judgment, defendant had not claimed that property as a homestead.

■ The lien of this judgment, having been acquired more than four months prior to the filing of the petition in bankruptcy, was not affected by the bankruptcy of Ganguin. Bankruptcy Act, § 67a (3 F. C. A., Title 11, § 107.) 8 C. J. S., Bankruptcy, § 244, p. 897.

■ By the provisions of § 2 of the Bankruptcy Act (3 F.C.A., Title 11, § 11a) courts of bankruptcy are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act, * * * as they are now or may be hereafter held, to— * * * (11) Determine all claims of bankrupts to their exemptions". Under this section of the Bankruptcy Act it is held that the bankruptcy court has exclusive jurisdiction to determine all claims of the bankrupt to exemptions, and, when the right to an exemption is determined, such determination cannot be questioned in a collateral proceeding. *In re McCrary Bros.*, 169 Fed. 485; *In re Bordelon*, 4 F. (2d) 285; *Walkup v. Covington*, 173 Tenn. 7, 114 S. W. (2d) 45; *Rosenthal v. Langley*, 180 Ga. 253, 179 S. E. 383, 100 A. L. R. 45; *Johnson v. Prosper State Bank*, (Tex. Civ. App.) 125 S. W. (2d) 707, 711; *Booth v. Bates*, 215 Ala. 632, 112 So. 209.

■■ In Nadler, The Law of Bankruptcy, § 332, p. 302, is contained this clear statement of such exemption provision:

"Since the effect of this exemption provision of the Act is to adopt the exemption statutes of the several states and of the United States, it is obvious that the bankruptcy court is bound by the statutes as interpreted by the courts of the applicable state. What property may be claimed, and under what conditions, and to what amount, and the manner in which it shall be claimed, together with the other characteristics, nature, extent and

attributes of exemptions, are all controlled by applicable state law, the statutes and their interpretation by the various courts, from the highest to the lowest of its tribunals. It would seem that where there is a conflict among the courts of the state or where no court of the state has interpreted its applicable statute, the bankruptcy court may construe such statute in the manner in which the purpose and intent of the Act extends."

See also in this connection Gilbert's Collier on Bankruptcy, 4th Ed., § 272, p. 167; 8 C. J. S., Bankruptcy, § 494, p. 1372; 6 Am. Jur., Bankruptcy, § 182, p. 619.

In 8 C. J. S., Bankruptcy, § 502, p. 1378, there appears this general statement:

"Whether the bankrupt has a right of exemption against general creditors, as of the time the bankruptcy petition was filed, is within the exclusive jurisdiction of the bankruptcy court to determine."

The principle therein enunciated is then elaborated upon as follows:

"Exemptions do not become such merely on a claim thereof in bankruptcy proceedings, but are subject to examination, determination, and allowance. By virtue of an express provision of the Bankruptcy Act § 2 (11) [11 U. S. C. A. § 11 (11)] courts of bankruptcy have jurisdiction to determine all claims of bankrupts to their exemptions. This jurisdiction, so far as it goes, is exclusive; and, when the right to exemption is determined, the conclusion cannot be questioned in a collateral proceeding. * * *

"On a claim of exemption the only question which concerns the court of bankruptcy is whether the debtor is entitled to his exemption as against general creditors; and, if such is the case, the claim cannot be denied because there are some creditors as against whom the claim of exemption could not be sustained."

In *Walkup v. Covington,* supra, the court, after stating that there was abundant authority for the general proposition above quoted from 8 C. J. S., Bankruptcy, § 502, said as follows:

"We have no question here of the power of Congress to fix the amount of homestead exemptions. No attempt to do so appears. The only power Congress has or has sought to exercise is the power to establish courts of bankruptcy and confer jurisdiction thereon to give effect to the exemptions allowed by the laws of the state in any given case and incidentally, to construe the meaning and effect of such exemptions, whether provided by a state statute or State Constitution.

"It cannot be doubted that the Congress may create courts of bankruptcy, with exclusive jurisdiction on the subject, and that this has been done, and it is also clear that the determination and adjudication of the exemption rights of bankrupts is within the competency of the United States District Court as a necessary incident of the administration of the bankrupt's estate. Much confusion and devastating delays would result, if, in each case, this question must be referred to the state courts for determination."

■ Exempt property constitutes no part of the bankrupt's estate, and the jurisdiction of the bankrupt court is limited to ascertainment and setting off to the bankrupt of the exempt property. *Schwanz v. Farmers Coop. Co.,* 204 Iowa 1273, 214 N. W. 491, 55 A. L. R. 644; *Lockwood v. Exchange Bank,* 190 U. S. 294, 47 L. Ed. 1061, 23 Sup. Ct. 751; Gilbert's Collier on Bankruptcy, 4th Ed., §§ 274, 275, pp. 168 and 169; 8 C. J. S., Bankruptcy, § 505, p. 1384.

■ As a general rule an order of the bankruptcy court setting aside property as a homestead to the bankrupt does not affect valid liens thereon. *Johnson v.*

*Prosper State Bank,* supra; *Sample v. Jackson,* 225 N. C. 380, 35 S. E. (2d) 236; Gilbert's Collier on Bankruptcy 4th Ed., § 295, p. 183; 6 Am. Jur., Bankruptcy, § 182, p. 619.

In 8 C. J. S., Bankruptcy, § 503c, p. 1382, it is said:

"An order of a bankruptcy court setting apart exemptions to a bankrupt is an adjudication that, at the time of the filing of the petition in bankruptcy, or at least at the date of the order, the property set apart was or is exempt as to creditors who are parties to, or have notice of, the bankruptcy proceedings and are without valid liens on the property; and it is binding and conclusive on such creditors, as well as on the bankrupt; but it does not affect, and is not res judicata as to, existing liens on the property and rights connected therewith * * *."

Pertinent to the question now under consideration is the following from *Johnson v. Prosper State Bank,* supra:

"So, we think in this case, the order of the Bankruptcy Court setting aside the premises as the homestead of the judgment debtor, did not and could not have the effect of discharging, impairing or otherwise affecting the judgment lien under consideration. The lien had become a vested right in appellee long before the premises, if ever, were impressed with appellant's homestead, and was obtained more than four months prior to the filing of the petition in bankruptcy; thus, the order setting aside the premises as appellant's homestead in no way affected appellee's rights therein. Whatever rights appellant acquired by the order of the Bankruptcy Court, establishing his homestead on the premises, was and is subject to appellee's valid and subsisting lien thereon."

■ A discharge in bankruptcy is only a personal release of the bankrupt and does not release a prior judg-

ment lien upon the property of the bankrupt. A judgment which has become a valid lien on property will continue to be so, but if a judgment is merely a personal liability it is released by a discharge. 8 C. J. S., Bankruptcy, § 582, p. 1559; 6 Am. Jur., Bankruptcy, §§ 492 and 497, pp. 806 and 807; *John Leslie Paper Co. v. Wheeler*, 23 N. D. 477, 137 N. W. 412, 42 L. R. A., N.S., 292, and citations of authorities in note at bottom of page 294. "A discharge is personal to the debtor. It follows, therefore, that a non-voidable lien is not affected thereby, for the effect of a discharge is to release the bankrupt's personal liability only. Neither is a judgment evidencing a lien, not discharged by the Act, annulled or extinguished except in so far as it imposes a personal liability upon the bankrupt." Gilbert's Collier on Bankruptcy, 4th Ed., § 536, p. 356.

It is asserted by defendant that the order of the bankruptcy court, setting aside the property here under discussion to the defendant as exempt, had the effect, under the Oregon homestead statute, of releasing such property from the lien of plaintiff's judgment. In support of this contention defendant relies on *Smalley v. Laugenour*, 30 Wash. 307, 70 P. 786, wherein the court, in referring to the homestead law then in effect in the state of Washington, said: "It will be remembered that the statute of this state permits a head of a family to select from his or her real property a homestead of a limited value, and exempts the same from the liens of general judgments, and from execution or forced sales thereunder." This case was appealed to the Supreme Court of the United States. That court, in affirming the judgment of the Washington Supreme Court, said: "The rights of a bankrupt to property as exempt are those given him by the state statutes, and if such exempt property is not subject to levy and sale

under those statutes, then it cannot be made to respond under the act of Congress." *Smalley v. Laugenour,* 196 U. S. 93, 49 L. Ed. 400, 25 S. Ct. 216. The principle last above stated is thus expressed in *Bush v. Lester,* 55 Ga. 579: "Exemption granted in bankruptcy resting on the state law has precisely the same effect against prior liens as exemption granted out of bankruptcy, or by the instrumentalities appointed by the state."

The crucial question in this case is whether the Oregon statute exempts a homestead from judgment liens. That statute, so far as material here, reads as follows:

"A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of three thousand dollars ($3,000), except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his or her spouse, parent or child, and such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead, not [nor] by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding three thousand dollars ($3,000), while held, with the intention to procure another homestead therewith for a period not exceeding one year." § 6-1301, O. C. L. A.

"Whenever a levy shall be made upon a homestead, the owner thereof, * * * may notify the officer making such levy, at any time before the sale thereof, that he claims a homestead in such lands, giving a description of the quantity of land claimed as a homestead and an estimate of the value thereof, and the remainder alone shall be subject to sale under such levy, unless the plaintiff in the execution shall deny the right to such homestead, or be dissatisfied

with the quantity or estimate of the value of the land so claimed as a homestead. If such plaintiff in the execution is dissatisfied with the quantity claimed or the estimate of the value thereof, then he may direct the officer making the levy to select three disinterested freeholders of the county who shall examine and appraise, under oath, the lands and improvements, and if the appraised value thereof exceeds the sum of three thousand dollars ($3,000), said freeholders may cause to be surveyed * * *.'' § 6-1304, O. C. L. A.

In *Sterrett v. Hurlburt,* 129 Or. 520, 275 P. 689, 278 P. 986, plaintiff brought suit against the sheriff of Multnomah County and others to enjoin them from selling on execution property owned by plaintiff, which she claimed as her homestead. The Circuit Court decreed ''that defendants and each of them be permanently enjoined from at any time in the future attempting to cause execution to issue on said judgment.'' The defendants appealed. This court, in its original opinion, affirmed the decree of the lower court, but, in its opinion on petition for rehearing, after calling attention to the above quoted excerpt from the decree of the Circuit Court, this court stated that the ''decree will be modified so as to enjoin defendants from having execution issue until such time as the homestead is abandoned or relinquished.'' It is, therefore, apparent, in the case just discussed, that this court did not consider the homestead as being exempt from the liens of every judgment, but that it was exempt from sale on execution from such liens.

It was stated in *Marvin & Co. v. Piazza,* 129 Or. 128, 276 P. 680, that ''A homestead is not an estate in land but a mere privilege or exemption of such an estate as the holder has in the land''.

Defendant also relies on *Willamette C. & C. Ser. v. Henry,* 138 Or. 460, 7 P. (2d) 261, in support of his contention that, under the Oregon homestead statute, plaintiff's lien was wiped out and annulled by the order of the bankruptcy court setting aside defendant's real property as exempt. In the case just referred to plaintiff instituted an action to recover on two promissory notes and caused a writ of attachment to be issued and levied on the homestead of defendant. Thereafter, and on December 3, 1927, defendant was adjudicated a bankrupt, and on July 10, 1928, he was discharged by the bankruptcy court from all debts provable against his estate. Summons was not served on defendant until April 18, 1929. It appears from the abstract that sometime in 1931 judgment was entered in favor of the plaintiff and against the defendant, in which judgment it was provided that the real property attached by the plaintiff should be sold to pay plaintiff's judgment, that said judgment "be and it is hereby ordered that the same be a lien only upon the real property above described, and be satisfied in so far as possible from defendant's interest in said real property and that the plaintiff have no judgment for any deficiency". This court reversed the judgment appealed from and remanded the cause to the circuit court with instructions to dismiss the action. In discussing the present homestead law the court stated that it exempted the homestead from the lien of every judgment.

The statement that, under the present law, homesteads are exempt from judgment liens was not necessary to the decision in the Henry case, and it is contrary to the holding in *Sterrett v. Hurlburt,* supra. The right to a judgment lien, as well as the right to a homestead, is entirely statutory. *Hansen v. Jones,* 57

Or. 416, 109 P. 868. Section 6-801, O. C. L. A., provides in part as follows: "From the date of docketing a judgment, * * * such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon." This section imposes a lien of a judgment upon all the real property of the defendant. No exception is made in case the land is claimed as a homestead. The judgment is not a lien on the homestead; it is a lien only on the land burdened by the exemption. Collection of the judgment by sale under execution is prohibited during the life of the exemption if the owner of the land makes timely claim to the exemption. §§ 6-1301 and 6-1304, *supra*; *Sample v. Jackson*, supra.

Section 6-1304, *supra*, provides two methods in which a homestead may be claimed. It may be claimed whenever "a levy shall be made upon a homestead" by the owner notifying the officer making such levy "that he claims a homestead in such lands". Making a levy implies the existence of a lien. The above section further provides "that when a judgment is recovered against a homestead owner, he may, if he so desires, make and file for record in the proper registry of deeds of the county in which the homestead is situated, a statement in writing, executed with the same formality required for the execution of deeds of real property, giving the description and the quantity of land claimed by him as a homestead, an estimate of the value thereof, and his name and postoffice address, with a declaration that he claims the said property as his homestead, and the making and filing of such statement shall have the same effect as the giving of the

notice first herein provided for.'' Making a claim under this last method is contingent upon the existence of a judgment against the homestead owner. A judgment against the homestead owner would seem to imply the existence of a lien against his property.

When the Homestead Act is considered as a whole and in connection with § 6-601, *supra,* relating to judgment liens, it is clear that the legislature did not intend to exempt the land claimed as a homestead from judgment liens but to prohibit the sale of it on execution when the right to the property as a homestead is timely asserted and established. In the instant case defendant had not claimed the property hereinbefore described as a homestead at the time plaintiff's judgment became a lien on the property, and the order of the bankruptcy court setting such property aside to the bankrupt as exempt did not have the effect, under the Oregon Homestead Act, of exempting such property from the lien of plaintiff's judgment.

Section 6-1002, *supra,* prescribes the grounds on which defendant is entitled to relief. It refers only to a person discharged from his debts pursuant to the bankruptcy act and authorizes the court, in which judgment has been rendered, to order that such judgment be discharged and satisfied of record ''if it shall appear to the court that he has been discharged from the payment of such judgment or the claim upon which such judgment shall have been based''.

Ganguin's discharge in bankruptcy released him personally from the payment of the judgment recovered by plaintiff against him, but such discharge did not release the lien of such judgment upon the property hereinbefore described. The satisfaction of such judg-

ment by the Circuit Court, or at its direction, would, however, release such lien. It was never the intention of the legislature, in enacting § 6-1002, *supra*, to authorize the Circuit Court to satisfy and discharge a judgment which was a valid lien on the bankrupt's property. In ordering the clerk of that Court "to enter satisfaction and discharge the judgment" in favor of plaintiff and against defendant, error was committed by the Circuit Court.

The order appealed from is reversed and the cause remanded to the Circuit Court with instructions to deny defendant's motion to have such judgment satisfied of record.

Kelly, J., did not participate in this decision.